## HINCHLIFF VS. HINMAN and others.

Under our statute (sec. 31, chap. 86, R. S.), a deed of land, executed, witnessed and acknowledged with all the formalities required to entitle it to record, may be read in evidence in any court of this state without further proof of its execution, although the grantor therein is dead.

The "written instruments" referred to in sec. 92, chap. 137, R. S., do not include such conveyances.

A justice of the peace has no authority to take the deposition of a party to a suit at the instance of an adverse party; but such deposition must be taken before a judge of the court in which the action is pending, a county judge or a court commissioner. Sec. 55, chap. 137, R. S.; Laws of 1861, chap. 241.

When the plaintiff in an action to reform a deed is rendered incompetent to testify in his own behalf by the fact that the grantor in said deed is dead and the principal defendant defends as his administrator, whether the other defendants are competent to testify as to transactions between the plaintiff and themselves, *quære.*

Where one has executed a deed of land, and delivered it to the grantee with intent to pass the estate, the legal effect of such delivery will not be altered by the fact that both parties supposed that the deed would not take effect until recorded, and might be revoked at any time before record.

APPEAL from the Circuit Court for *Dodge* County.

Action to reform a deed. The complaint alleges that in November, 1857, the plaintiff, and his brother Hinchliff Hinchliff, and their father, William Hinchliff, since deceased, entered into an agreement by which said William agreed to convey to the plaintiff and his said brother, to be held by them in common, certain real property in Dodge county, to wit, the south-west quarter of the south-west quarter, and the south-east quarter of the south-west quarter, of S. 12, T. 10 N., R. 13 E. (the title to which was then in him), and the consideration therefor was fixed by the parties at $200 ; that, to carry into effect this agreement, said William and his wife *Parthena* (one of the defendants), on the 26th of said month of November, duly executed and acknowledged their warranty deed, whereby they conveyed to the plaintiff and said Hinchliff Hinchliff the south-east quarter of the south-west quarter, and the south-west quarter of the *south-east* quarter, of said section 12, which deed was duly recorded in February, 1862 ; that the plaintiff, in accordance with the agreement aforesaid, paid said William $200 for said premises, and the plaintiff and said Hinchliff Hinchliff immediately entered into possession of the lands intended to be conveyed by said deed, as first above described ; that by mistake of the conveyancer in drawing said deed, the words " south-west quarter of the *south-east* quarter," were inserted instead of the words " south-west quarter of the *south-west* quarter," which mistake was not discovered by or known to the grantees for a long time after the deed was executed and the consideration paid ; that said William Hinchliff

never owned said " south-west quarter of the *south-east* quarter" of said section ; that said south-west quarter of the *south-west* quarter of said section, on said 26th of November, 1857, went into the actual occupancy of the plaintiff and said Hinchliff Hinchliff, and is still occupied and cultivated by the plaintiff ; that said Hinchliff Hinchliff and wife, for a valuable consideration, conveyed the south half of the south-west quarter of said section 12, by deed executed in June, 1861, and recorded in the following September, so that all the *title* and interest of the plaintiff and Hinchliff Hinchliff in the south-west quarter of said south-west quarter became and remain vested in the plaintiff ; that said William Hinchliff died in December, 1860, intestate, and at the time of his decease said misdescription had not been discovered ; that the defendant *Hinman* is the administrator of said William, duly appointed &c. ; that sundry of the other defendants are children and heirs at law of said William, and the defendants *George Higbee* and *Tracy Harris* husbands of the two female heirs. The plaintiff demands judgment that said deed of William Hinchliff be reformed by inserting the words " south-west quarter of *south-west* quarter," instead of " south-west quarter of *south-east* quarter," &c. The answer of the administrator, *Hinman,* admits that at the commencement of the action the plaintiff was in possession and occupancy of the land alleged to have been intended to be conveyed to him and Hinchliff Hinchliff by William Hinchliff, but alleges that the plaintiff held and occupied said land under a lease from him (said *Hinman*) as administrator of said deceased, and denies that he or Hinchliff Hinchliff ever went into possession or occupancy of the land under a conveyance from said deceased. The answer also admits that said William died intestate, and that the several defendants are interested in the estate as alleged in the complaint; and also that said deceased never owned the "south-west quarter of the south-east quarter" of said section 12. The answer denies all

the other material allegations of the complaint. No answer appears to have been filed by the other defendants.

On the trial, the plaintiff offered in evidence the deed mentioned in the complaint, which appeared upon its face to be entitled to record, and was indorsed in the usual manner as having been recorded February 18, 1862, in the proper county. The defendant objected to the reception of the deed in evidence, on the ground that, the alleged grantor being dead, the signing, sealing and delivery of the deed could only be proved by the attesting witnesses; and also on the ground that the evidence was irrelevant. Objection overruled, and deed read in evidence. The plaintiff also read in evidence a quit-claim deed to him from Hinchliff Hinchliff and wife, of the south half of the south-west quarter of said section 12, executed and recorded as alleged in the complaint. He also offered in evidence the deposition of *Parthena Hinchliff*, widow of said William Hinchliff, taken before a justice of the peace of Monroe county in this state. Objected to, on the ground that the justice had no authority to take it; objection overruled, and deposition read. The defendant moved to strike out of said deposition all that related to transactions between the witness and said William Hinchliff when no other person was present, for the reason that the witness was then the wife of said William. Motion denied. After the plaintiff had introduced other evidence and rested, the defendant offered as a witness *George Higbee*. His testimony was objected to on the ground that he was named as one of the defendants in the action, but was received subject to the decision of the court thereafter to be made.

The court found that all the material allegations of the complaint were true, and stated in its written finding that the evidence of said *Higbee* had been rejected as incompetent. Judgment, that the plaintiff have the relief demanded in this complaint, and recover from the defendant the costs of the action. The defendant *Hinman* filed written exceptions, and appealed.

The main question in the case was as to the *delivery* of the deed sought to be reformed. The evidence bearing on that point was voluminous, and it has not been deemed worth while to set it out here at length.

*Smith & Ordway*, for appellant:

1. The court erred in admitting in evidence the alleged deed from William Hinchliff to his two sons, without proof by the subscribing witnesses of the execution. 4 Cow. & Hill's Notes, 394 ; 1 Greenl. Ev., p 509 ; *Hollenback v. Fleming* ; 6 Hill, 303. Sec. 92, ch. 137, R. S., expressly requires that in case of the death of the person alleged to have signed an instrument, his signature shall be proven. Sec. 31, ch. 86, R. S., should be construed with reference to the provisions of said sec. 92. Any other construction would open the door to the grossest frauds. 2. The deposition of *Parthena Hinchliff* should have been rejected: (1)Because taken before a justice of the peace. (2) Because at the time of the alleged execution and delivery of the deed, which her testimony is adduced to prove, she was the wife of the grantor. Had he been living, and the defendant herein, she would have been incompetent, (1 Greenl. Ev., § § 334-5) although he might have testified on his own behalf, *Hasbrouk v. Vandervoort*, 5 Seld., 153 ; *Berbat v. Allen*, 7 Excheq., 609. And the wife is not a competent witness against one who is co-defendant with her husband. 1 Greenl. Ev. § 335. Nor is it material that the relation of husband and wife has been dissolved by death. Id. 337. And whatever has come to the knowledge of the witness through the confidence of the marital relation can *never* be divulged in testimony. 2 Kent (2 ed.), 478 ; *Doker v. Hasler*, 21 E. C. L., 416 ; *Babcock v. Booth*, 2 Hill, 181. In this case the knowledge testified to was directly derived from the husband, and she testified concerning an alleged contract to which they both were parties. It is only by force of the statute that one co-defendant testifies against another; and it should not be extended to a case like this, where the interest of the decedent

cannot be protected by his own oath. 3. The court erred in rejecting the testimony of the defendant *Higbee*. As a co-defendant, he was entitled to testify in his own behalf. R. S., ch. 137, sec. 50. Nor was he incompetent by reason of any of the provisions of sec. 51 of that chapter. The *opposite* party was not suing or defending as legal representative of any person deceased, nor was he assignee of any right of action on the part of William Hinchliff, deceased. 4. Counsel contended that the evidence showed that there had been no delivery of the deed in question by William Hinchliff in his life time to either of the grantees, with intent to pass the title thereby, but it remained in the possession, actual or constructive, of said William till his death, and was not by him intended, or by the grantees expected, to be delivered so as to take effect until after his death; and that, such being the case, the deed was inoperative.

*Billinghurst & Lewis*, for respondent.

*By the Court*, COLE, J. We will notice such exceptions as we deem material in this case, in the order in which they arise upon the record and were discussed by counsel.

First, it is insisted that the deed given by William Hinchliff—the reformation or correction of which is the object of this suit—was improperly admitted in evidence, its due execution not having been proven by the subscribing witnesses. The deed, however, was attested by two witnesses, and acknowledged before a magistrate, and was executed with all the formalities of law essential to entitle it to be recorded. Our statute expressly authorizes a conveyance thus executed, witnessed and acknowledged to be read in evidence in any court within the state, without further proof thereof. Sec. 31, ch. 86, R. S. The counsel for the appellants contends that this provision was not intended to apply to a case where the grantor in the deed is dead. But no exception of the kind is found in the statute. Its language is general, clear and un-

ambiguous, and covers all conveyances "authorized by law to be recorded, and which shall be acknowledged or proved as provided in this chapter." Nor is there anything in section 92, chap. 137, inconsistent with this construction. The latter section evidently refers to a different class of instruments from those mentioned in section 31 above cited. If upon trial it is found that the statute with this construction opens the door to fraud and injustice, the remedy is with the legislature. But we will add that we can perceive no ground for apprehension upon that score.

The next exception relates to the admission of the deposition of *Parthena Hinchliff.* She was a party to the suit, and lived more than thirty miles from the place of trial. Her deposition was taken by the respondent before a magistrate in conformity to sections 8 et seq., chap. 137. As her testimony was unfavorable to some of her co-defendants, they objected to its admission, on the ground that the statute gives a justice of the peace no authority whatever to take the deposition of a party to the record. Sections 53, 54 and 55, of chap. 137, are relied on in support of this view. Upon an examination of those provisions, we are of the opinion that the objection was well taken, and that the deposition was erroneously admitted. For those sections, in effect, provide that where a party to an action resides more than thirty miles from the place of trial, his deposition may be taken by the adverse party before a *judge of the court,* or *county judge,* on previous notice to the party to be examined and any other adverse party, of at least five days. By a subsequent enactment, the words "or court commissioner" are added after the words " or county judge" in the 55th section. This legislation clearly shows *that* it was not the design to permit the depositions of parties to the record to be taken before a justice of the peace, but to confine the power of taking them to the judge of the court, county judge, or court commissioner. Whether there is any substantial ground or reason for taking a distinction between the

manner of taking the deposition of a party, and that of taking the deposition of any other witness, we need not stop to inquire. The legislature seem to have made a distinction, and limited the examination of parties to certain officers. Of course a party wishing to use the deposition must comply with the statute for taking it, in order to render it available. This not having been done in this case, the deposition of *Parthena Hinchliff* cannot be considered in determining the cause.—The next objection is, that the circuit court improperly excluded the testimony of *George Higbee*. As a matter of fact the testimony was admitted under objection, but the judge states in his finding that he did not consider it in deciding the cause, because he deemed it incompetent. *Higbee* was a party to the suit—being the husband of *Mary J.*, daughter and heir at law of William Hinchliff; and it is claimed that he was disqualified by virtue of section 51 of the chapter just cited. It is said that the respondent is clearly incompetent to testify in his own behalf under that section, inasmuch as the principal defendant on the other side defends in the character of administrator. The principal matter in controversy relates to the execution and delivery of the deed by the deceased William Hinchliff, and the respondent is not permitted to give evidence about that transaction for the reason that the other actor cannot be called upon to correct or contradict his statements if untrue. Hence, by the principle and policy of the statute, the respondent is excluded. For the same reason, it is claimed, the defendant *Higbee* ought not to be a witness and testify as to matters which occurred between him and the respondent when the latter is disqualified. This view of the matter is not without force and reason. But whether it is sound, we shall not decide, because, assuming that *Higbee* was a competent witness, there is nothing in his testimony which would change our views upon the remaining point in the case to be considered. We have therefore examined his evidence upon

the supposition that it was admissible, but still the result is not changed.

And this brings us to the main question in the cause, namely, whether the evidence shows that the deed was ever delivered by William Hinchliff to the respondent so as to make it effectual to pass the title? And upon this point it must be admitted that the evidence is somewhat conflicting, and leaves some room to doubt as to what was the real intent of the parties to the conveyance. There is certainly considerable testimony tending to show that there was no complete delivery of the deed, and that the grantor never assented to the possession of it by the grantee as an instrument for passing the title. But after carefully weighing all the evidence bearing on that point, we do not think it sufficiently strong to overcome the opposing circumstances, particularly to rebut the presumption of delivery arising from the possession of the deed by the grantee. We do not, however, propose to go into any decision of the evidence upon the question of delivery, and shall content ourselves with barely stating the conclusion at which we arrived in considering it. We think the weight of evidence decidedly in favor of the theory that there was a good and sufficient delivery of the conveyance.

It is possible, as is suggested on the brief of the counsel for the respondent, that notwithstanding the deed was executed and delivered with intent to pass the title, yet the parties supposed it would not take effect until it was recorded, and that while unrecorded the grantor might revoke or recall it. It is more than probable that the parties were laboring under that impression. Still this error in law cannot change the consequences resulting from their deliberate acts. If the deed was executed and delivered with intent to pass the estate to the grantee, it must so operate although the grantor might have supposed he could revoke the conveyance at some future time if he desired.

It is said that it is very improbable that William Hinchliff

would have conveyed absolutely to his sons property worth $1,-200 or $1,500 for a consideration of $200 or thereabouts. This will not appear so strange when regard is had to the character, condition and situation of the grantor. It might appear ungenerous, and is surely unnecessary, to make any severe remarks upon his character and disposition as they are delineated in the proofs. It is sufficient to say that it fully appears he was rather impulsive and capricious, and far advanced in life. He undoubtedly had a strong desire, when not under the influence of passion, to have his son *Richard* live with him and work the farm. And as a strong inducement for him to do so, he conveyed a portion of the farm to him and another son. There is nothing very unnatural or strange about the transaction when the circumstances and condition of the parties are considered. That the old man might have thought he could recall the conveyance, if not pleased with the conduct of his sons, is quite probable. But, as already observed, this does not change or vary the legal effect of the delivery of the deed when once made with intent to pass the estate.

Upon the point that there was a mistake in the description of the property there is no room for doubt. If the deed was delivered so as to become effectual to pass the title, then it is clear that it should be corrected so as to conform to the intent of the parties.

We think that the respondent was entitled to recover costs. Whether those costs shall ultimately come out of the administrator's own pocket or be paid out of the estate, is a question which may arise in the final settlement of the administrator's account in the probate court. But no reason occurs to us why the respondent should not recover his costs in this suit.

On the whole case we think the judgment is right and must be affirmed.